Mary **KESSLER**

v.

**GENERAL SERVICES ADMINISTRA-
TION,** United States Civil Service Com-
mission, Charles J. Dullea, Chairman of
Review Board, Arthur Miller, D. P.
Dunne, Harold Moss, Martin D. Freier,
and Leo Kurtzberg.

No. 65 Civ. 483.

United States District Court
S. D. New York.

April 11, 1966.

Mary Kessler, pro se.

Robert M. Morgenthau, U. S. Atty., for
defendants; Alan G. Blumberg, Asst. U.
S. Atty., New York City, of counsel.

FRANKEL, District Judge.

This is plaintiff's fourth lawsuit in this Court arising from the terminal events of a long career as a civil servant, which ended with her dismissal in November 1963 on five charges of insubordination. See Kessler v. Kurtzberg, 237 F.Supp. 122 (S.D.N.Y.1962); Kessler v. General Services Administration, 236 F.Supp. 693, and id. at 698 (S.D.N.Y.1964), both affirmed at 341 F.2d 275 (2d Cir. 1964). In this action her claims are for:

(1) invalidation of her discharge and reinstatement with back pay;

(2) nullification of an order suspending her for ten days in October 1962;

(3) upward revision of her employee performance ratings for 1962 and 1963; and

(4) damages of $200,000 from the General Services Administration, the Civil Service Commission, and various officers of these agencies "for injury to health, reputation, and deprivation of happiness arising out of the derogatory information disseminated among the fellow employees and the general public, and interference with plaintiff's performance of her work assignments, and interference with her freedom of speech and action."

Relying upon the administrative hearing and appeal record, the prior adjudications, and affidavits, defendants have moved for summary judgment.

■ Defendants are correct in urging that *res judicata* concludes plaintiff's claims relating to her suspension, her 1962 performance rating, and her compendious tort claim against the agencies and individual officials. These causes were resolved against her in the cases cited above. They may not be relitigated. This leaves for determination plaintiff's 1963 performance rating and her discharge.

■ The first of these items is quickly ended. Plaintiff declined an invitation to pursue the prescribed administrative appeal of her performance rating. On the unlikely assumption that a court might ever order the requested change from "Satisfactory" to "Outstanding", her failure to exhaust the administrative remedy precludes further inquiry into that subject.

■ The remaining question, as to the validity of plaintiff's discharge, has required more extended consideration. In her lengthy complaint and other presentations, plaintiff has sought to contest again on the merits the five charges of insubordination that led to her dismissal. We put these efforts to one side. It requires no search of precedents beyond plaintiff's own cases to recall "that the court will not examine into the merits of the discharge or suspension of employees in the executive branch of government, but will inquire only whether the procedure which was followed satisfied the applicable statute and regulations." Kessler v. General Services Administration, supra, 236 F.Supp. at 696.

■ Accordingly, we have studied with care the administrative hearing and review proceedings through which plaintiff (sometimes with counsel, sometimes, as now, *pro se*) pressed her claim for reinstatement. The record reveals a fair and careful inquiry into an unfortunate picture of friction between plaintiff and her superiors. The only genuine questions for those reviewing her dismissal were essentially questions of credibility— as to whether plaintiff was, as her superiors charged, hostile, uncooperative, abusive, and insubordinate. As to such questions, obviously, there is no occasion for us to have a view. It is enough if the matters were aired in an orderly way and resolved by duly constituted administrative tribunals.

■ Plaintiff contends, however, that the proceedings were fatally defective in three respects. First, and most importantly, she points out that a portion of the tape recording testimony on two of the five charges against her was lost so that a typewritten transcript of this segment could not be produced. And she hints darkly, though without particularization, that this was no accident.

We have scrutinized this aspect of the record closely, and called for reargument and supplemental briefs on the subject. We conclude that it creates no issue warranting a trial.

When the loss of the tape was discovered, the agency had a written summary prepared by the three members of the hearing committee, including plaintiff's own designee. Plaintiff and her counsel declined an invitation to submit her own summary or to indicate any exceptions to the one that had been prepared.

Thereafter, plaintiff was given, and took advantage of, an opportunity to testify at a Civil Service Commission hearing concerning the two charges covered in the missing transcript. In addition, her counsel was given a free hand to inquire of agency people as to whether any of them had been at fault in any way in connection with the loss. In the administrative proceedings, and on the record before me, it has become clear that the gap in the transcript, despite plaintiff's general suspicions, represents nothing sinister. The original agency tribunal—having heard the witnesses, and having most of the proceedings transcribed, plus its own summary of the missing portion—was as well supplied as judges commonly are with materials for resolving the issues before it. In the administrative review proceedings, plaintiff and her lawyer had ample opportunity to fill the gap in the typed transcript and explore the reasons for its existence. Her primary position throughout was that the loss was an incurable deficiency, and that there was nothing for it but to start all over again. There was no showing to justify that, and none has been made now. There has been no demonstration of any reason for canvassing this subject further in a trial.

■ Plaintiff contends, secondly, that the administrative hearing was unfair because she was not permitted to call a Miss Bono, a former co-employee who had left the agency in 1956. In an informal offer of the proof to be made by this witness, plaintiff's counsel said she would testify about the nature and quality of plaintiff's relationships with her colleagues and superiors. The presiding officer, observing that the hearing concerned specific charges of insubordination some six to seven years after Miss Bono's departure, ruled that neither plaintiff nor the agency should be permitted to explore such remote background material. Imagining the most expansively favorable things Miss Bono might have said for plaintiff about those earlier times, it is impossible to conclude that the exclusion of her testimony rendered the hearing unfair.

■ Finally, plaintiff contends that the official present at her hearing as "Management Representative" under the agency's regulations should not have been there because, as her counsel announced at the outset, he was to be called (and was called) by her as a witness. There is nothing of substance in this.

We find, in short, no genuine issue to justify the trial plaintiff seeks. The motion for summary judgment is granted.

So ordered.